AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

FILED
United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>2015 Buick Verano, 4-Door Sedan bearing VIN 1G4PR5SKXF4184022 currently located at 1552 US Route 66, Suite 2, Grants, NM  87020 | Case No.  25-MR-249 |

**APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated by reference.

located in the _____ District of ___New Mexico___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC § 1153 | Major Crimes Act |
| 18 USC § 113(a)(6) | Assault Resulting in Serious Bodily Injury |

The application is based on these facts:
See attached affidavit, submitted by BIA/OJS Special Agent RoAnna Bennett and approved by AUSA Mark A. Probasco.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

RoAnna Bennett, BIA/OJS Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephonically sworn and electronically signed *(specify reliable electronic means)*.

Date: February 10, 2025

*Judge's signature*

City and state: Albuquerque, NM

Honorable John F. Robbenhaar
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br>2015 BUICK VERANO, 4-DOOR SEDAN<br>BEARING VIN 1G4PR5SKXF4184022<br>CURRENTLY LOCATED AT 1552 U.S.<br>ROUTE 66, SUITE 2, GRANTS, NM  87020 | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE**

I, RoAnna Bennett a Special Agent with the Bureau of Indian Affairs (BIA), Office of Justice Services (OJS), Laguna Agency, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the 2015 Buick Verano, V.I.N. 1G4PR5SKXF4184022, described further in Attachment A ("Subject Vehicle"), for evidence, instrumentalities, and contraband described further in Attachment B, concerning an assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(6).

2. I am a Special Agent with the BIA/OJS, Laguna Agency, and have been since March 2014.  I have been a Law Enforcement Officer for approximately 24 years and have performed law enforcement duties as a Military Police Officer, Military Police Investigator, Criminal Investigator, Special Agent, while employed with the United States Army.  During this time, I received training at the United States Army Military Police School and the Criminal Investigation Division Special Agent Course located in Fort Leonard Wood, Missouri.  I am currently a Special Agent with the Bureau of Indian Affairs and during this time I attended the

1

Criminal Investigative Training Program at the Federal Law Enforcement Training Center located in Glynco, Georgia. I have received on the job training from other agents in the investigation of federal offenses, to include aggravated assault resulting in serious bodily injury due to motor vehicle crashes involving alcohol. My investigative training and experience include, but is not limited to, conducting surveillance; interviewing subjects, victims, and witnesses; writing affidavits for search warrants and criminal complaints; collecting evidence; and learning legal matters which includes the topics of Fourth Amendment searches.

3.      The following information contained in this Affidavit is based on my training and experience and information provided to me by other law enforcement officials. Unless otherwise indicated, where I have referred to written or oral statements, I have summarized them in substance and in part, rather than verbatim. Not all of the facts of the investigation known to me are contained herein, only those necessary to establish probable cause to search the below-listed items pertaining to the captioned investigation. As will be shown below, there is probable cause to believe that evidence of violations of Title 18, United States Code, Section 1153 and 113(a)(6), that being assault resulting in serious bodily injury, will be found in the motor vehicle listed below and described in Attachment A.

## IDENTIFICATION OF THE VEHICLE TO BE EXAMINED

4.      The property to be searched consists of a motor vehicle, as described in Attachment A and B and is identified as follows:

- 2015 Buick Verano, white, 4-door sedan, New Mexico License Plate BTKS95, VIN No. 1G4PR5SKXF4184022, currently located at Central Auto Towing and Salvage, a tow yard, 1552 U.S. Route 66, Suite 2, Grants,

NM 87020, in violation of Title 18, United States Code, Section 1153, and 113(a)(6).

5. The applied for warrant would authorize the forensic examination of the motor vehicle for the purpose of identifying any collision data, crash data, and/or event data recorder (EDR) data, including impact and pre-impact speed braking, change of speed over time and other vehicle technical data, stored on/within the internal and/or external memory of the device particularly described in Attachment B.

## SUMMARY OF PROBABLE CAUSE

6. The BIA/OJS Laguna Agency is conducting a criminal investigation of ERNESTINE CHAVEZ (hereinafter referred to as CHAVEZ) regarding possible violations of 18 USC §§ 1153 and 113(a)(6). On October 4, 2024, at approximately 5:55 p.m. multiple unknown individuals called 911 and reported a motor vehicle crash which occurred on westbound Interstate 40, at approximately mile marker 114, Laguna, New Mexico. Sergeant (SGT) Rosslyn Lente, Laguna Police Department (LPD), was reported to be the first law enforcement officer on scene followed by the arrival of Laguna Emergency Medical Services (EMS). The crash occurred within the exterior boundaries of the Laguna Indian Reservation, State of New Mexico and is considered "Indian Country." ERNESTINE CHAVEZ (YOB: 1990), a Native American female, is an enrolled member of the Navajo Nation, State of New Mexico.

7. The Target Vehicle was identified by police as a white in color 2015 Buick Verano, 4-door passenger sedan, bearing New Mexico license plate BTKS95, driven by CHAVEZ. CHAVEZ's child, E.R. (YOB 2019), was a passenger. CHAVEZ and E.R. were reported to have received injuries from the crash. E.R.'s injuries included three deep lacerations to the left leg (thigh, knee, and mid leg), a skull fracture on the left side of her head, and a clavicle fracture.

8. Vehicle #2 was identified by police as a red in color Freightliner, Commercial Motor Vehicle (CMV) for Yash & Khushi Transport Inc., bearing California license plate YP61325, attached to a trailer bearing Idaho license plate TU5644 and driven by JOHN DOE #1. There were no other persons identified to be in this CMV at the time of the crash. This CMV was parked on the right shoulder of Interstate 40 due to mechanical problems.

9. Vehicle #3 was identified by police as a white in color Freightliner Cascadia, Commercial Motor Vehicle (CMV) for Cold Rush Express, bearing Utah license plate A060329, attached to a trailer bearing Maine license plate 3630609 and driven by JOHN DOE #2. There were no other persons identified to be in this CMV at the time of the crash. Vehicle #3 was traveling westbound in the passing lane near approximately mile marker 114, on Interstate 40 at the time of the incident. The Target Vehicle hit Vehicle #2 which caused the Target Vehicle to spin out of control and travel into Vehicle #3's lane of travel and cause Vehicle #3 to strike the Target Vehicle.

10. The Bureau of Indian Affairs (BIA), Office of Justice Services (OJS) Laguna Agency was notified and Special Agent (SA) RoAnna Bennett responded. LPD had also notified the New Mexico State (NMSP) Crash Reconstruction Unit (CRU). CRU was enroute to the crash scene. CHAVEZ and minor child were reported to have been transported to the University of New Mexico Hospital in Albuquerque, New Mexico. SA Bennett was advised by SGT Lente their department had initiated the process of obtaining a search warrant to obtain a blood sample of CHAVEZ, pursuant to their Implied Consent Law, as CHAVEZ was believed to be under the influence of an intoxicating liquor as described below.

**WITNESS INTERVIEWS**

11.     SA Bennett contacted SGT Lente, LPD, who gave a preliminary investigative report as to the crash scene. SGT Lente provided upon arrival at the scene she noted debris on the highway and saw several unidentified individuals assisting with a small female child laying on the pavement. SGT Lente made contact with CHAVEZ who had an odor of alcohol emitting from her person and noted there were several cans of Polar brand Seltzer beer cans throughout the crash scene. CHAVEZ stated she consumed "a lot" of alcohol. SGT Lente's preliminary investigation revealed the Target Vehicle appeared to have been traveling westbound on Interstate 40 and traveled onto the right shoulder and hit the rear of vehicle #2. The Target Vehicle then spun and traveled back onto the traveling lanes of Interstate 40 and was hit by vehicle #3 which caused the Target Vehicle to land in front of vehicle #2 on the right shoulder of the highway. The Target Vehicle came to a stop with the front of the vehicle facing a north direction.

12.     SA Bennett interviewed JOHN DOE #1, the driver of vehicle #2, who stated he was parked on the side of the road, with the hazard lights on, and got out of the CMV to look under the hood. While attempting to open the hood from the passenger side of the CMV, he heard a loud noise. JOHN DOE #1 then went around the front of Vehicle #2 to check what made the noise. JOHN DOE #1 saw the Target Vehicle in front of his CMV and a child on the ground.

13.     SA Bennett interviewed JOHN DOE #2, the driver of vehicle #3 who stated he was traveling westbound Interstate 40 behind the Target Vehicle and witnessed the vehicle strike the rear of vehicle #2. The Target Vehicle traveled back into his lane (the passing lane of the highway) while spinning and caused his CMV to hit the Target Vehicle. JOHN DOE stated his CMV was equipped with a video camera, which was on and recording at the time of the incident and offered to request his company to provide a copy to SA Bennett.

## TECHNICAL BACKGROUND REGARDING THE TARGET VEHICLE AND ITS INFOTAINMENT AND TELEMATICS SYSTEMS

14. Based on previous investigative experience working with the NMSP Crash Response Unit (CRU), affiant has knowledge each vehicle may be equipped with an Event Data Recorder (EDR) that may have recorded information from the crash like impact and pre-impact speed, braking, change of speed over a time and other vehicle technical data. The EDR in the vehicle driven by CHAVEZ needs to be downloaded and/or retained. Your affiant understands the data received from the EDR can be used in assisting with the investigation and can determine information regarding the vehicle's operation at the time of the crash, including but not limited to possible speed of the vehicle at the time of the crash. A crash profile of the vehicle may assist in determining the cause of the crash and the nature of the crash. Based on my training and experience, as well as discussions with other experienced law enforcement officers and witnesses, I have also learned that:

   a. Many modern motor vehicles are equipped with sensors, cameras,[1] transmitters, and electronic control units (ECUs)[2] to monitor and manage vehicle operations, track vehicle movement, and exchange information with other vehicles and infrastructure.[3] These systems also enable motor vehicles

---

[1] As of 2018, the US National Highway Safety Transportation Agency requires new motor vehicles sold in the United States to have backup cameras installed by the manufacturer.

[2] "ECU" is a generic term applied to any embedded computer that controls one or more electrical systems within a vehicle. ECUs are typically installed in a vehicle by the original equipment manufacturer during the manufacturing process. There are many types of ECUs, and as vehicles have more features each year, the number of ECUs in each motor vehicle increases. Newer motor vehicles can integrate as many as 150 ECUs, ensuring, in theory, that each part of the motor vehicle is running properly. Some examples of common ECUs include the Engine Control Module, Transmission Control Module, Brake Control Module, and Suspension Control Module, as well as the Telematics Control Unit and Infotainment Control Unit.

[3] The infotainment and telematics systems in motor vehicles are not the same as "black box" recorders. Black box recorders are called event data recorders (EDRs) or crash data recorders. These black box recorders can record vehicle speed, engine speed, steering angle, throttle position, braking status, force of impact, seatbelt status, and airbag deployment. In 2006, the US National Highway Traffic Safety Administration (NHTSA) adopted regulations requiring EDRs to uniformly collect certain crash data to assist crash investigators with accident reconstruction

       to interface with various types of mobile devices to facilitate the use of applications, including third-party navigation, wireless telephone, multimedia streaming, and the like. To perform these computing functions, modern motor vehicles collect, process, and store significant volumes of data.

  b.  Two commonly installed ECUs within motor vehicles are infotainment and telematics systems—sometimes referred to as the Telematics Control Unit and the Infotainment Control Unit. These systems typically retain large amounts of user data within the vehicle.

  c.  A vehicle's infotainment system combines hardware and software to provide entertainment features. Many infotainment systems allow drivers and passengers to connect their handheld electronic devices to the vehicle. When connected, the driver and/or passengers may gain access to, for example, Global Positioning System (GPS) navigation, video players, music streaming, voice calling, texting, and traffic data. Many systems enable talking hands-free with Bluetooth connectivity, listening to music, watching videos, or pulling up a mapped route to a destination. Many of these features are accessible via the (usually interactive) console located on the front dashboard of the vehicle.

  d.  A vehicle's telematics system typically collects and stores diagnostic data from various systems (other ECUs) within the vehicle, including historical

---

efforts. In 2012, NHTSA proposed requiring manufacturers to install EDRs in all new cars and trucks, but in 2019, the NHTSA withdrew the proposal because automakers have voluntarily installed the devices in nearly all vehicles.

   navigation points, speed, and event data. Historical event data may include information regarding when the car's trunk, doors, and windows opened and closed, when headlights turned on and off, and when gears changed or brakes were engaged.

e. The main difference between the infotainment and telematics systems is that the infotainment system is about entertainment for the occupants of the vehicle, and the telematics system is for collecting and reporting (transmitting) information—such as vehicle use data, maintenance requirements, and automotive servicing—about the vehicle. Typical telematics data may include turn-by-turn navigation, remote access, emergency calling, and maintenance notifications. Examples of vehicle telematics systems include General Motors' OnStar, BMW's "Assist," and Mercedes' "mbrace." Some of these systems are integrated multimedia navigation and telematics systems in one (combined infotainment/telematics systems), like Toyota's "Entune" and Ford's "Sync."

f. The data generated, collected, transmitted, and retained by motor vehicles can provide valuable information in law enforcement investigations of crimes. For example, many infotainment systems support the importation of content and other data information from a particular user's mobile device. Such data may include content that may provide attribution to particular user(s), including mobile device identifiers, wireless telephone numbers, user account details, passwords, user voice profiles, contact lists, call logs,

    text messages, pictures, e-mail, videos, web history, GPS coordinates, and other historical navigation information.

g.  I am aware that the computers (ECUs) within many motor vehicles store data for prolonged periods of time. Furthermore, even after a previously-connected mobile device is removed from the physical vehicle, data may remain within the digital storage of the system. Such stored data can be used to identify locations, victims, witnesses, associates, and co-conspirators and may include communications and images of criminal activity. In sum, a forensic examination of a motor vehicle's infotainment and telematics systems may reveal the vehicle's GPS location information, movements, operations, and user data at critical moments before, during, and after the commission of a crime.

h.  As previously stated, the TARGET VEHICLE is a 2015 Buick Verano, white, 4-door sedan, New Mexico License Plate BTKS95, VIN No. 1G4PR5SKXF4184022. To complete a forensic extraction from the TARGET VEHICLE, it may be necessary, temporarily, to remove trim and other components of the TARGET VEHICLE to access the information subject to search. It may also be necessary to repair the device, replace the screen, reconnect wires, and replace batteries. It may be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within

the TARGET VEHICLE. In the event that potentially destructive processes are required to perform this extraction, parts of the TARGET VEHICLE may be destroyed and rendered useless.

    i.    Furthermore, it may be necessary to return to the TARGET VEHICLE and reconnect the infotainment and telematics systems to the TARGET VEHICLE's power source to perform the extraction using forensic software. This is because there are various computer networks working simultaneously when a vehicle is powered on, and in some vehicles, the infotainment and telematics systems require the other networks to work in tandem to complete the data extraction.

    j.    The requested warrant authorizes a later review of the media and information seized or copied from the TARGET VEHICLE, which review may continue past the date required for execution of the warrant.

15. Based on my training and knowledge obtained from New Mexico State Police (NMSP) crash reconstruction agents, the National Highway Traffic Safety Administration (NHTSA), and other law enforcement agents and officers, I have also learned the following:

    a.    An Event Data Recorder (hereinafter referred to as an "EDR"), is a device installed in a motor vehicle to record technical vehicle and occupant information for a brief period of time before, during, and after a crash.

    b.    EDRs may record (1) pre-crash vehicle dynamics and system status; (2) driver inputs; (3) vehicle crash signature; (4) restraint usage/deployment status; and (5) post-crash data such as the activation of an automatic collision notification (ACN) system.

      c.    EDRs record information related to an "event," such as a vehicle crash.

      d.    The NMSP has equipment to access the EDRs located in vehicles and download the data therein.

16. It is believed that the Target Vehicle, a 2015 Buick Verano, white, 4-door sedan, New Mexico License Plate BTKS95, VIN No. 1G4PR5SKXF4184022 is equipped with an EDR.

## OTHER EVIDENCE CONTAINED IN THE VEHICLE

17. Photographs of the interior and exterior of the vehicle may also assist in determining the cause and the nature of the crash along with the extent of damage to the vehicle after the collision. An examination of the vehicle's exterior light bulb filaments may determine whether the parking lights/headlights/running lamps/turn signals/brake lamps were in working conditions at the time of the crash. Measurements, if necessary, of the interior and exterior of the vehicle may assist with determining the cause of the crash.

18. Based on my training and experience, I know that vehicles often contain documents that can help to identify the occupants and owners of the vehicle. These documents often come in the form of registration forms, insurance forms, car titles, receipts, and bills. Collection of these documents can assist in attributing who was in the TARGET VEHICLE at the time of the crash as well as any activities of the occupants in the time leading up to or causing the crash, such as receipts for the purchase of alcohol or containers for the use and consumption of alcohol.

## CONCLUSION

19. Based on my training and experience and the facts as set forth in this affidavit, there probable cause to believe that CHAVEZ committed violations of 18 U.S.C. §§ 1153, 113(a)(6), namely, a count of assault resulting in serious bodily injury in Indian Country. Therefore, I submit

that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Vehicle described in Attachment A to seek items described in Attachment B.

20. Assistant United States Attorney Mark A. Probasco reviewed and approved this search warrant application.

21. I swear that this information is true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
RoAnna Bennett
Special Agent
Bureau of Indian Affairs

Subscribed and sworn telephonically and signed electronically on February 10, 2025

_____
Honorable John F. Robbenhaar
UNITED STATES MAGISTRATE JUDGE

# **ATTACHMENT A**

*Property to be Searched*

The property to be searched is a White in color 2015 Buick Verano, with vehicle identification number (VIN) 1G4PR5SKXF4184022, bearing New Mexico license plate BTKS95, currently located at Central Auto Towing and Salvage, a tow yard, 1552 U.S. Route 66, Suite 2, Grants, NM 87020 (the "Target Vehicle").

This warrant also authorizes, *inter alia*, the forensic examination of the TARGET VEHICLE's infotainment and telematics systems for the purpose of identifying the electronically stored information described in Attachment B.

# ATTACHMENT B

*Property to be Seized*

The following materials, which constitutes evidence of the commission of a criminal offense, contraband, or property designed or intended to use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, U.S.C. Section 1153 Offenses committed within Indian country and Title 18 U.S.C. Section 113(a)(6) Assault Resulting in Serious Bodily Injury:

1. Records indicating vehicle ownership including title records, purchasing and leasing agreements, insurance documentation, registration, maintenance records, tire maintenance records, and fuel purchases.

2. Other financial records indicating travel and possession of the vehicle, including gas purchase receipts or credit card receipts.

3. Valid or false identification records and documents, including drivers' licenses, social security cards, tribal enrollment records, state identification cards and foreign identification documents.

4. Stored electronic data, information, images, and related digital storage, and vehicle diagnostic data from electronic systems within the TARGET VEHICLE, including:

    a. unique device identifiers;
    b. media files;
    c. call logs;
    d. contacts;
    e. SMS;
    f. Bluetooth connections;
    g. USB connections;
    h. voice commands;

1

**ATTACHMENT B**

*Property to be Seized*

    i. voice recordings;

    j. voice calling;

    k. web browser history;

    l. Wi-Fi connections;

    m. speech recognition;

    n. time updates;

    o. track logs;

    p. traction events;

    q. traffic updates;

    r. stop/start log;

    s. GPS warnings;

    t. hard acceleration;

    u. hard braking;

    v. light status;

    w. odometer reading;

    x. gear shifts;

    y. historical navigation data;

    z. historical speed data;

    aa. historical event data; and

    bb. data streaming services and related content;

5. Alcoholic beverage(s) and/or alcoholic beverage container(s) containing any amount of beverage, or none, whether open or closed. Any package(s) apparently used to advertise, store and/or transport alcoholic beverage(s). Any document(s) recorded on any media

**ATTACHMENT B**

*Property to be Seized*

which indicates and/or tends to indicate the advertisement, sale, purchase, use, consumption, transfer and/or storage of alcoholic beverage(s).

6. All cellular communication devices.

7. Examination of the vehicle's exterior light bulb filaments.

8. Items which establish or tend to establish possession, use, occupancy, presence and/or the right to possession of the vehicle to be searched.

9. Documentation of the herein-described vehicle and/or the herein-described items, to be seized, by means of measurement, photography, videography and/or any other means deemed necessary by law enforcement.

A complete mechanical inspection of the herein-described vehicle, to be searched. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence and property designed for use, intended for use, or used in committing a crime described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the BIA may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.